IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TILSA D. FERNANDEZ, | ) | |
| | ) | CIVIL ACTION NO. 23-16313 |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| CENTRAL STATES PENSION FUND, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, to correct unlawful employment practices by Central States Pension Fund ("Central States" of "Defendant") based on religion and provide appropriate relief to Plaintiff Tilsa D. Fernandez ("Fernandez" or "Plaintiff"). As alleged with greater particularity below, Defendant violated Title VII when it discriminated against Fernandez by refusing to accommodate her sincerely held religious belief and terminated her employment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) (Title VII), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the state of Illinois and within the jurisdiction of the United States District Court for the Northern District of Illinois.

1

## PARTIES

3. Plaintiff, Tilsa D. Fernandez, is a resident of Cook County, Illinois.

4. At all relevant times, Defendant Central States has continuously been doing business in the State of Illinois and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6. At all relevant times, Defendant has been a covered entity under Title VII.

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII by Defendant.

8. On June 7, 2023, the EEOC issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On August 31, 2023, the Commission sent the parties a "Conciliation Failure and Notice of Rights", advising Plaintiff that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

11. Since at least June 2021, Defendant has engaged in unlawful employment practices in violation of sections 701(j) and 703(a) of Title VII, 42 U.S.C. §§ 2000e(j) and 2000e-2(a). The unlawful practices include but are not limited to, the following:

12. Plaintiff began working for Defendant on November 30, 2015.

13. In March 2020, most of Defendant's employees were told to work from home in response to the pandemic.

14. In June 2021, Defendant mandated that employees were to get the COVID vaccine as a condition of employment.

15. Defendant stated that it would consider medical and religious exemptions only; however, Defendant also stated that there would not be may exemptions issued and no more than a handful.

16. Defendant stated that applicable employees were to be vaccinated by August 13, 2021, with a return to the office date of September 7, 2021.

17. Defendant stated that a third of the applicable employees would come into the office on September 7, 2021, and work from home for the remainder of the week. On September 9, 2021, a different third of the applicable employees would come into the office and work from home for the remainder of the week. On September 9, 2021, the remaining third of the applicable employees would come into the office and work from home the remainder of the week.

18. Defendant stated that each group of applicable employees (broken into thirds as discussed in Paragraph 17) would come into the office one day per week and work from home the rest of the week. This new work arrangement was subsequently pushed back to the week of April 4, 2022.

19. Fernandez practices as a Shaman dedicated to various spiritual paths, including Ifa

Lucumi, commonly known as Regla de Ocha, Regla Lucumí, or Lucumí, encompassing practices often referred to as "Santería."[1]  Within her Temple, Fernandez is also a healer, meaning that she holds a position within her community to heal, love, and purge.

20.  Ifa Lucumi is an African diasporic religion that developed in Cuba during the late 19th century. It arose through a process of syncretism between the traditional Yoruba religion of West Africa, the Catholic form of Christianity, and Spiritism.

21.  Fernandez primarily practices shamanism as a 'Chamán' or Healer 'Curandera.' This practice is an extension of Fernandez's Mexican heritage, passed down through generations by her elder ancestors.

22.  Fernandez specifically focuses on healing women, particularly those who have experienced trauma or ancestral abuse.  Her expertise lies in womb healing and clearing the sacral chakra, which holds our healing capacities as women.  Fernandez firmly believes, as did her ancestors, that a woman's body is sacred, serving as a natural healing vessel that influences our family, lineage, and ancestors energetically.

23.  Practicing Chamáns like Fernandez do not rely on vaccines as a form of illness prevention and/or protection.

24.  As a Chamán, Fernandez believes that diseases happen when certain spirits or demons start to interact with people's bodies and souls. Chamáns represent a link between humans and supernatural forces; they provide communication between the two sides and achieve an understanding of the parties through bargaining and sacrifices. The diseases that doctors would treat using vaccines, pills and medication, x-rays and scans, and surgeries and therapies are

---

[1] Santeria is a recognized religion and was the subject of the Supreme Court case *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).  In *Lukumi*, the Supreme Court determined that a municipal ordinance at issue, which prohibited animal sacrifice, was not neutral because it effectively prohibited conduct only undertaken by adherents to the Santeria religion as a part of their religious practice. *See* 508 U.S. at 534–35.

4

addressed in completely different ways among Chamáns, who employ gifts for the spirits, chanting of the prayers, and various rituals to interact with the spirits and affect human souls, bodies, and well-being.

25. As a Chamán, it is Fernandez's belief that we have the ability to heal ourselves by reaching higher consciousness, in addition to using elements of the earth such as herbs, essential oils, crystal energetic healing, and sound healing.

26. On July 15, 2021, Plaintiff submitted a request for a religious exemption based on her sincerely held religious beliefs.

27. Plaintiff stated her belief that an individual disease or pandemic is an underlying spiritual or energetic issue, that manifests into the physical body, attaching to various viruses and disease.

28. As a result and extension of her sincerely held religious beliefs, Plaintiff stated that she was unable, in good conscience, to receive vaccines, including but not limited to COVID-19 vaccines on the grounds that receiving such a vaccine would violate Plaintiff's sincerely held religious beliefs, including her beliefs that human life is a gift from the spirits and disease and illness are a spiritual matter, not to be treated by modern medicinal means.

29. Plaintiff's religion also prohibits abortion. Grounded in ancient Yoruba culture, children are deemed a "blessing" from Eledumare (the Supreme being in the Yoruba religion) and practitioners are warned not to "look a gift horse in the mouth" (so to speak) because that child might have come to this world to change the practitioner's life.

30. As a result and extension of her sincerely held religious beliefs, Plaintiff stated that she was unable, in good conscience, to receive vaccines, including but not limited to COVID-19 vaccines, that were developed or tested using cell lines derived from aborted fetuses.

31. Fernandez was required to and did certify that her religious beliefs were sincere when she submitted the accommodation request.

32. On July 30, 2021, Defendant sent a questionnaire to Plaintiff, questioning her sincerely held religious beliefs, asking if Plaintiff was ever vaccinated before, with what and when, and if Plaintiff ever previously took manufactured medications, what and when.

33. On August 4, 2021, Plaintiff responded to the questionnaire, advising that she had received a vaccination when she was a child and that she does not use manufactured medications. Fernandez further stated that the COVID-19 vaccine was tested on animals, and as such, contrary to her spiritual belief which honors animals. Fernandez also stated that she converted to veganism to align with her spiritual beliefs.

34. On August 13, 2021, Defendant denied Plaintiff's request for a religious exemption. Defendant stated that it was "not clear how the practice of Shaman beliefs equates to the practice of a religion, rather than a sociological or philosophical set of beliefs."

35. Fernandez questioned whether this analysis of her religion was one that Defendant was allowed to legally determine. She wrote: "This is an intrusion on my religious and spiritual practice. I don't feel comfortable with my employer invading my privacy, especially those who will review my special accommodation [request] and have other beliefs that are in alignment with abolishing my practice." She went on to state that "I will wear my mask at all times per guidelines given by [Defendant] and stay at my desk at all times, avoiding in-person conferences and [taking] weekly COVID tests at the expense of my employer."

36. Defendant then sent Plaintiff written notice that her religious accommodation was denied and directed her to get the COVID-19 vaccine within seven days. Defendant further stated that if Plaintiff was not vaccinated within seven days, she would be denied the ability to work at the office and she would no longer be able to work from home. Defendant stated that it would then terminate Plaintiff once she reached the maximum number of unexcused absences.

37. Plaintiff did not get the COVID-19 vaccine because to do so would violate her sincerely held religious beliefs.

38. On October 22, 2021, Plaintiff filed a charge of discrimination with the EEOC stating: "I was hired by Respondent on or about November 30, 2015. My current position is Pension Analyst. During my employment, I was subjected to national origin based harassment. I complained to Respondent without remedy. On or about July 30, 2021, I requested a religious exemption to the COVID-19 vaccination mandate, which was denied. I believe I have been discriminated against because of my religion, Shaman; my national origin, Hispanic, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended."

39. On April 14, 2022, Plaintiff had not received the COVID-19 vaccine, and Defendant fired her as it said it would.

40. On March 23, 2023, Plaintiff amended her EEOC Charge to include the following: "I filed a charge of discrimination with the EEOC on or about October 22, 2021. Since filing my charge of discrimination, I was placed on an unpaid leave of absence and discharged on or about April 14, 2022."

41. On June 7, 2023, the EEOC issued a determination finding that "the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against Charging Party, and a class of employees, by denying them an exemption to Respondent's mandatory Covid-19 vaccination policy as a religious accommodation, in violation of Title VII. I have also determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent retaliated against Charging Party, and a class of employees, for engaging in protected activity, by placing them on an unpaid leave, and subsequently discharging them, in violation of Title VII."

42. Defendant engaged in unlawful employment practices in violation of sections 701(j) and 703(a) of Title VII, 42 U.S.C. §§ 2000e(j) and 2000e-2(a). Specifically, Defendant: failed or refused to provide Plaintiff with a reasonable accommodation of her sincerely held

7

religious beliefs; discriminated against Plaintiff on the basis of her religion and Mexican and Hispanic national origin and heritage; and retaliated against Plaintiff by placing her on unpaid administrative leave and ultimately terminating her employment on account of her engaging in a protected activity.

43. Fernandez is a practicing Shaman who believes that manufactured drugs and vaccines are antithetical to her religion.

44. Defendant's requirement that Plaintiff receive the COVID-19 vaccination conflicted with Fernandez's sincerely held religious beliefs.

45. Defendant knew that Fernandez's religious beliefs conflicted with its requirement that she receive the COVID-19 vaccine.

46. Defendant took adverse employment action against Fernandez because she failed to comply with its requirement that she receive the vaccine and on account of her religion, national origin and in retaliation for engaging in a protected activity.

47. The effect of the practices complained of in paragraphs 11-46 above has been to deprive Fernandez of equal employment opportunities and otherwise adversely affect her status as an employee because of her religious beliefs and/or national origin.

48. The unlawful employment practices complained of in paragraphs 11-46 above were and are intentional.

49. The unlawful employment practices complained of in paragraphs 11-46 above were done with malice or with reckless indifference to the federally protected rights of Fernandez.

<u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from discriminating against persons on the basis of their national origin and/or religion, including by failing to

accommodate such persons' sincerely held religious beliefs.

B.     Order Defendant to promulgate and carry out policies, practices, and programs which provide equal employment opportunities to persons protected by Title VII and that eradicate the effects of its past and present unlawful employment practices, including discrimination and retaliation.

C.     Order Defendant to make whole Fernandez by providing her appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and/or front pay.

D.     Order Defendant to make whole Fernandez by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above in amounts to be determined at trial.

E.     Order Defendant to make whole Fernandez by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trial.

F.     Order Defendant to pay Fernandez punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.     Grant such further relief as the court deems necessary and proper.

H.     Award the Plaintiff her attorneys fees and costs of this action.

<u>JURY TRIAL DEMAND</u>

Plaintiff requests a jury trial on all questions of fact raised by her complaint.

Dated this 28th of November, 2023.

Respectfully Submitted,

By:     *Isl Ethan G. Zelizer*
Ethan G. Zelizer
HR LAW COUNSEL
29 S. Webster St., Suite 350-C
Naperville, Illinois 60540
630.551.8374
ethan@hrlawcounsel.com
*Attorneys for Plaintiff*