UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TILSA FERNANDEZ, ) | |
| ) | Case No. 23-cv-16313 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| CENTRAL STATES PENSION FUND, ) | |
| ) | |
| Defendant. ) | |

**MEMORANUM OPINION AND ORDER**

Plaintiff Tilsa Fernandez sues her former employer, Central States Pension Fund ("Central States"), claiming that her termination was the result of religious and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and that Central States retaliated against her for exercising her Title VII rights. Before the Court is Central States' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part Central States' motion [11].

**BACKGROUND**

The following facts are taken as true for the purposes of resolving Central States' motion. Plaintiff's case centers on her refusal to become vaccinated against COVID-19 and her employer's response. Plaintiff worked for Central States from November 2015 until April 2022, when she was fired for failing to take the COVID-19 vaccine. (Dkt. 1 ¶¶ 12, 39.) Plaintiff alleges no details about the nature of her job or Central States' business. Regardless of the specifics, Plaintiff claims Central States told Plaintiff and its other employees to work from home beginning in March 2020 in response to the COVID-19 pandemic. (*Id.* ¶ 13.)

In June 2021, after COVID-19 vaccines became widely available, Central States implemented a COVID-19 Vaccination Policy (the "Policy") for its employees. (*Id.* ¶¶ 14, 16; Dkt. 12-1 at 4–8.)

1

The Policy required all employees to become "fully vaccinated" against COVID-19 by August 13, 2021, or face an enumerated list of consequences, *see* Dkt. 12-1 at 5, unless granted a medical or religious exemption. (Dkt. 1 ¶ 15.) According to Plaintiff, Central States said that there would be "no more than a handful" of exemptions granted. (*Id.*)

Undeterred, Plaintiff sought a religious exemption in July 2021. (*Id.* ¶ 26.) Both parties attach Plaintiffs' exemption request (the "Request for Religious Exemption" or "Request") to their briefing.[1] In relevant part, Plaintiff explained her Request as follows:

> I am a Shaman Practitioner, it is an ancestral practice that I've adopted and have been [ ] practicing for the past 10+ years. As a Shaman it is our belief that we have the ability to heal ourselves by reaching higher consciousness, in addition to using elements of the earth such as herbs, essential oils, crystal energetic healing, and sound healing.
>
> I am also a healer and hold the space for my community to heal, love, purge. The Covid-19 Vaccine, completely goes against being a Shaman and my connection with my ancestors. We do not rely on vaccines as a form of protection. It is my belief that an individual disease or p[a]nd[e]mic is an underlying spiritual or energetic issue, that manifest into the physical body by attaching to varies [sic] viruses and disease. When we heal internally and spir[i]tually we live a healthier and balance[d] life. As [ ] women in the practice our womb is the alter and it's the life force for healing. I cannot inject any poison into my body that will hinder my Sacral Chakra. …
>
> I have been practicing [Shamanism] the last 10 years and have dove deeper the last few years. I participate in daily rituals, as well as ceremonial healing (natural medicine). …
>
> This is an intrusion of my religious and spiritual practice. I don't feel comfortable with My employer invading my privacy, especially those who will review my special accom[m]odation and have other beliefs that are in alignment with abolishing my practice. …
>
> After carefully meditating on the subject, I reject the vaccine. But will follow CS guid[e]lines of being aggres[s]ively excluded from coworker[s].

(Dkt. 20-1 at 4–5.)

---

[1] The official title of the document is "Request for Religious Exemption/Accommodation Related to COVID-19 Vaccine." (Dkts. 12-1, 20-1.) Because it is referenced in and central to Plaintiff's complaint, the Court will consider the Request for Religious Exemption in resolving Central States' motion. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based [on] … documents that are critical to the complaint and referred to in it[.]") (collecting cases).

Plaintiff's religion as alleged in her complaint is far more wide-ranging. She explains that her Shamanism is informed by "various spiritual paths," including: Ifa Lucumi, an African diasporic religion incorporating Santería that developed through a "syncretism" of the Yoruba religion and Catholicism; her practice as a "Chamán," which derives from her Mexican-elder ancestors; her belief in a Supreme Being called Eledumare; her spiritual veganism; and her focus on healing women suffering from trauma or ancestral abuse, because women's bodies are "natural healing vessel[s] that influence[ ] our family, lineage, and ancestors energetically." (Dkt. 1 ¶¶ 19–22, 29, 33.)

This confluence of beliefs in turn informs Plaintiff's objections to modern medicine. Plaintiff's Yoruba beliefs prohibit abortion, and so also prohibit using vaccines that were derived from the cell lines of aborted fetuses. (*Id.* ¶¶ 29–30.) Plaintiff alleges that the COVID-19 vaccine was developed or tested using such cell lines. (*Id.* ¶ 30.) As a practicing Chamán, Plaintiff does not rely on vaccines, and uses different methods than pills, medication, x-rays, scans, and surgeries to treat disease. (*Id.* ¶¶ 24–25.) She believes that disease is caused by "certain spirits or demons" interacting with "people's bodies and souls." (*Id.* ¶ 24.) In addition to spiritual healing practices, Plaintiff relies on "elements of the earth such as herbs, essential oils, crystal energetic healing, and sound healing." (*Id.* ¶ 25.)

On July 15, 2021, Plaintiff requested a religious exemption from Central States' Policy. (*Id.* ¶ 26.) Although Plaintiff explains her religious beliefs and objections with more detail in her complaint, her July 15 request included only the information in the Request for Religious Exemption described above. Central States followed up on Plaintiff's Request on July 30, 2021, questioning the sincerity of her beliefs and asking if she was previously vaccinated and if she ever took manufactured medications. (*Id.* ¶ 32.) Plaintiff responded five days later that she received a vaccine when she was a child but that she does not take manufactured medicines. (*Id.* ¶ 33.) Central States denied Plaintiff's Request soon after.

3

Central States explained that it was "not clear how the practice of Shaman beliefs equates to the practice of religion, rather than a sociological or philosophical set of beliefs." (*Id.* ¶ 34.) It told Plaintiff that if she did not get her COVID-19 vaccine within seven days, it would deny her entry to the office and terminate her when she reached her maximum unexcused absences. (*Id.* ¶ 36.) Plaintiff still refused to get the vaccine. (*Id.* ¶ 37.) Instead, on October 22, 2021, Plaintiff filed a charge of religious and national origin discrimination with the EEOC. (*Id.* ¶ 38.)

A few months after filing her charge, Plaintiff's unexcused absences ran out, and she was fired on April 14, 2022. (*Id.* ¶ 39.) Plaintiff amended her EEOC charge, apparently to include a retaliation claim. (*Id.* ¶ 40.) The EEOC issued a "reasonable cause" finding on June 7, 2023, but the parties were unable to informally resolve the matter; the EEOC sent a "Conciliation Failure and Notice of Rights" on August 31, 2023. (*Id.* ¶¶ 7–9, 41). There is no dispute at this point that Plaintiff exhausted her administrative requirements before the EEOC.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

4

**DISCUSSION**

    1. **Religious Discrimination**

Title VII prohibits employers from discriminating against employees because of certain protected characteristics, including religion. 42 U.S.C. § 2000e–2(a). The statute defines "religion" broadly, 42 U.S.C. § 2000e(j), and "require[s] an employer to make reasonable efforts to accommodate the religious practices of employees unless doing so would cause the employer undue hardship." *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012) (citing *Reed v. Great Lakes Cos.*, 330 F.3d 931, 934–35 (7th Cir. 2003)). Plaintiff alleges that Central States discriminated against her because of her religion when it failed to accommodate her anti-vaccine Shaman beliefs and fired her for refusing the COVID-19 vaccine.

Courts in this circuit apply a burden-shifting framework to religious discrimination claims like those at issue here. *See Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 883 (7th Cir. 2023), *vacated on other grounds*, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023). At this stage, however, Central States challenges only Plaintiff's attempt to plead a *prima facie* case of religious discrimination. To establish such a case, Plaintiff must demonstrate that "(1) the observance or practice conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance or practice to [the] employer's attention; and (3) the religious observance or practice was the basis for [the employee's] discharge or other discriminatory treatment." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013) (citing *Porter*, 700 F.3d at 951) (internal quotation marks omitted).

Central States challenges Plaintiff's complaint as failing to support three elements necessary to a religious discrimination claim. First, Central States argues that Plaintiff fails to allege she provided it with notice of the conflict between her religious beliefs and the Policy. Second, Central States argues that Shamanism is not a religion for the purposes of Title VII. Third, and relatedly,

5

Central States argues that Plaintiff alleges only a medical or philosophical conflict with the Policy, not a religious one. The Court addresses each argument in turn.

### a. Notice

Employers cannot be expected to know and understand the varieties of their employees' religious experiences. They are therefore "not charged with detailed knowledge of the beliefs and observances associated with particular sects." *Reed*, 330 F.3d at 935–36. Instead, to succeed on a religious failure-to-accommodate claim, a plaintiff must show that she "called the religious observance or practice to her employer's attention." *Porter*, 700 F.3d at 951 (citations omitted). Specifically, she "must give the employer fair notice of [her] need for an accommodation and the religious nature of the conflict." *Adeyeye*, 721 F.3d at 450.

Central States argues that Plaintiff failed to provide it with notice of her numerous and varied religious beliefs (and the corresponding vaccination conflicts) until she filed this complaint— for example, that she practices Ifa Lucumi, Dkt. 1 at ¶ 20; that her Yoruba beliefs prohibit abortion, *id.* at ¶ 29; and that she objects to the COVID vaccine based in part on its supposed connection to aborted fetal cells, *id.* at ¶ 30. Central States argues that, as alleged, the only possible notice it had was based in Plaintiff's Request for Religious Exemption. That document plainly references only Plaintiff's Shaman beliefs and practices.

Plaintiff does not dispute that the only information she provided Central States before filing this case was her Request for Religious Exemption. (Dkt. 20 at 7–8.) She also does not argue or allege that Central States' knowledge about her other religious beliefs could be revealed in discovery. She instead seems to suggest that her mere religious objection was enough to put Central States on notice of the myriad traditions that inform her general religious outlook. The Court disagrees. "It is difficult to see how an employer can be charged with discrimination on the basis of an employee's religion when he doesn't know the employee's religion." *Reed*, 330 F.3d at 934. Plaintiff alleges that

6

she told Central States one set of religious beliefs (Shamanism) and withheld others (Ifa Lucumi, Yoruba, etc.). Without further allegations on notice of the latter, Plaintiff's religious discrimination claims based on those beliefs fail.

To the extent that Central States argues it had no notice whatsoever of Plaintiff's religious beliefs, the Court disagrees. Plaintiff alleges that she requested exemption from the Policy because of her Shamanism. The Court agrees, however, that the allegations support only notice of Plaintiff's Shamanism. In addressing the rest of Central States' motion, therefore, the Court will consider only the allegations related to Shamanism.

### b. Shamanism as a Religion

Central States argues that Shamanism is not a "religion" for the purposes of Title VII. The Seventh Circuit test for whether a belief qualifies as "religious" under Title VII is whether the belief "occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God." *Adeyeye*, 721 F.3d at 448 (quoting *United States v. Seeger*, 380 U.S. 163, 165–66, 85 S. Ct. 850 (1965)). Such beliefs "deal[ ] with issues of ultimate concern," like "matters of the afterlife, spirituality, or the soul, among other possibilities." *Id.* Religious beliefs do not need to be "acceptable, logical, consistent, or comprehensible to others," *Thomas v. Review Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), and "the court does not concern itself with the truth or validity of religious belief." *Snyder v. Chicago Transit Auth.*, No. 22 CV 6086, 2023 WL 7298943, at *7 (N.D. Ill. Nov. 6, 2023) (Shah, J.) (citing *Adeyeye*, 721 F.3d at 451).

To support its argument, Central States relies on an article titled "What Is Shamanism?" published by the Society for Shamanic Practice. (*See* Dkt. 12 at 5–6.) But the principles explained in the article do not necessarily matter to Plaintiff's claim. Plaintiff does not allege that she follows the Society for Shamanic Practice, nor that she agrees with its form of Shamanism. Plaintiff's own beliefs are what matter here. *See Hernandez v. Comm'r*, 490 U.S. 680, 699, 109 S. Ct. 2136, 2148, 104

7

L. Ed. 2d 766 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds*.") (emphasis added); *Kane v. De Blasio*, 19 F.4th 152, 168 (2d Cir. 2021) ("Denying an individual a religious accommodation based on someone else's publicly expressed religious views—even the leader of her faith—runs afoul of the Supreme Court's [precedents].") (citations omitted).

Plaintiff's reliance on older, out-of-circuit cases addressing various forms of Shamanistic practice is likewise misplaced. As Central States points out, the cited cases address potentially different forms of Shamanism than Plaintiff's. *See State v. Cook*, No. 5-19-26, 2020 WL 615076, at *5 (Ohio Ct. App. 3d Feb. 10, 2020) (Shamanism based on "'[meeting] God' on a bad LSD 'trip'"); *Thunderhorse v. Pierce*, 715 F. App'x 357, 358 (5th Cir. 2017) (Native American Shamanism); *Gonzalez v. Joey*, No. Civ. No. 12-834, 2016 WL 10587952, at *2–3 (D.N.M. Mar. 2, 2016) (Native American and Anahuac Theology). Plaintiff does not argue otherwise, but instead asserts that "Shamanistic practices and Shamanism are religion[s] and religious in nature and have been recognized as such by various courts." (Dkt. 20 at 9.) However, courts do not rule on whether certain religions deserve legal protection; they rule on whether a party's beliefs are "religious," as broadly defined above.

The question before the Court, then, is not whether the Society for Shamanic Practice or any other organization is a "recognized religion," but whether Plaintiff's specific beliefs, as alleged in her Request, are "religious." Making all reasonable inferences in Plaintiff's favor, the Court finds that they are. Plaintiff alleges that she has been practicing her Shamanism for more than a decade, including by participating in daily rituals and ceremonial healing. Plaintiff engages in these practices to "reach[ ] higher consciousness," so as to heal disease caused by "underlying spiritual or energetic issue[s]." She likewise forgoes certain modern medicine that "will hinder [her] Sacral Chakra." As alleged, these beliefs "deal[ ] with issues of ultimate concern." *Adeyeye*, 721 F.3d at 448. Plaintiff therefore adequately alleges that her beliefs are "religious" under Title VII.

8

### c. Religious Objections

In its third argument, Central States contends that Plaintiff's complaint shows she was fired for her medical or personal convictions rather than any religious beliefs. Title VII only prohibits employers from discriminating against an employee "because of" her religion, 42 U.S.C. § 2000e-2(a)(1). After briefing in this case was complete, the Seventh Circuit clarified the relevant legal standard, holding "that an employee seeks accommodation because of their religion when their request, by its terms, is plausibly based at least in part on some aspect of their religious belief or practice." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1007 (7th Cir. 2024).[2] *Passarella* settles the parties' dispute here.

In *Passarella*, the employer-defendant fired the two employee-plaintiffs after determining that their objections to its COVID-19 vaccination requirement "were more rooted in safety concerns than religious convictions." *Id.* at 1007. Both plaintiffs' objections came in the form of requests for exemptions and included a combination of religious, medical, and safety concerns. For example, one plaintiff made the following objection:

> I am asserting my rights as a Christian to be exempt from taking this vaccine. I feel it was developed in a rush. I don't trust the information and long-term effects. Therefore I believe this is not right for me to put this vaccine into my body. I also feel that it's my body and no one has the right to tell me what to do with my personal being. I have prayed about this and have asked GOD for guidance, and believe that HE is with me on this decision.

*Id.* at 1008.

The *Passarella* court interpreted Title VII and held that "the controlling inquiry at the pleading stage [is] whether the employee plausibly based her vaccination exemption request at least in part on an aspect of her religious belief or practice." *Id.* at 1009. This standard entails that "[a]n

---

[2] Before the Seventh Circuit issued *Passarella*, this Court and a number of others in this district applied an arguably higher standard. *See Passarella*, 108 F.4th at 1012–13 (Rovner, J., dissenting) (citing *Flores v. Cook Cnty.*, No. 23 CV 16260, 2024 WL 3398360, at *2 (N.D. Ill. July 11, 2024) (Daniel, J.) (collecting cases); *Brown v. Cook Cnty. Auditor's Office*, No. 23-cv-10452, 2024 WL 3426888, at *5 (N.D. Ill. July 16, 2024) (Coleman, J.)).

employee may object to an employer's vaccine mandate on both religious and non-religious grounds—for example, on the view that receiving the vaccine would violate a religious belief *and* implicate health and safety concerns." *Id.* The court found that the *Passarella* plaintiffs' requests satisfied that standard, making them "religious in nature within the meaning of Title VII." *Id.*

This Court has already held that Plaintiff adequately alleges her beliefs are religious in nature. Aside from the distinction between Shamanism and Christianity, it is hard to see how Plaintiff's claims materially differ from those of the *Passarella* plaintiffs. She makes the same kind of spiritual purity claims, while also objecting to medical aspects of the vaccine. *Compare* Dkt. 12-1 at 8 (Plaintiff objecting because (1) Shamans believe in healing through "reaching a higher consciousness" without "relying on vaccines" that would "hinder [their] Sacral Chakra," and (2) diseases are caused by "spiritual or energetic issue[s]" and vaccines are "poison"), *with Passarella*, 108 F.4th at 1009 (plaintiff objecting because (1) "[t]he Bible says: My body is a temple of the Holy Spirit and to present my body as a living sacrifice, Holy and acceptable to God," and (2) "I don't trust the information and long-term effects"). For the same reasons as in *Passarella*, the Court finds that Plaintiff here satisfies the pleading standard for a Title VII religious discrimination claim.

And like the Seventh Circuit did in *Passarella*, this Court warns "not to overread today's decision." 108 F.4th at 1012. Central States will be able to challenge whether Plaintiff's beliefs are "sincere" or "religious" in nature on a more developed record, and to attempt to show that any accommodation for Plaintiff would have presented an "undue hardship" on its determination to protect its staff "from a disease that has taken approximately 1.2 million lives within the United States." *Id.* But as *Passarella* instructs, those fights are for a later date.

The Court denies Central States' motion as to Plaintiff's religious discrimination claim.

**2. National Origin Discrimination**

The same provision of Title VII that prohibits discrimination based on religion prohibits discrimination based on "national origin." 42 U.S.C. § 2000e-2(a). Plaintiff alleges that Central States discriminated against her based on her "Mexican and Hispanic national origin and heritage." (Dkt. 1 at ¶ 42.) Central States moves to dismiss this theory, which Plaintiff does not plead as a separate count, arguing that Plaintiff has failed to plead any facts sufficient to support a nation origin discrimination claim. The Court agrees.

To survive a motion to dismiss her Title VII discrimination claims, Plaintiff "need only allege enough facts to allow for a plausible inference that the adverse action suffered was connected to her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774 (7th Cir. 2022) (citing *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021)). Plaintiff does not need to present a *prima facie* case of discrimination. *See id.* at 777. However, she must do more than merely plead that she belongs to a protected group and was wrongfully terminated; "[t]here must be some *facts* that make the wrongful [termination] contention plausible." *Id.* at 776.

Plaintiff alleges no facts connecting her termination to her national origin. Indeed, the first time that Plaintiff invokes her Mexican heritage in the complaint is to describe the origins of part of her religious beliefs, Dkt. 1 at ¶ 21, which is not an aspect of her beliefs that she raised in the materials she submitted to Central States. (*See* Dkt. 12-1.) And although Plaintiff alleges that she was a member of a protected class, she does not allege that any similarly situated employees were treated differently. Nothing in Plaintiff's complaint allows the Court to infer a link her termination with her national origin.

Plaintiff's only argument in response is that she "intends to demonstrate through discovery that other non-Mexican employees were granted a religious exemption and she was not." (Dkt. 20 at 13.) To unlock the doors of discovery, however, she will need to plead more. *See Kaminski*, 23

11

F.4th at 776 (citing *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 855 (7th Cir. 2019) (a plaintiff asserting a discrimination claim "cannot rely on ... generalized allegations alone, however, but must combine them with facts particular to his case to survive a motion to dismiss")). The Court therefore grants Central States' motion as to Plaintiff's national origin discrimination theory.

### 3. Retaliation

Plaintiff alleges that Central States retaliated against her in violation of Title VII by terminating her employment after she filed an EEOC charge. To succeed on her retaliation claim, Plaintiff "must plausibly allege three elements: [1] a statutorily protected activity, [2] a materially adverse employment action, and [3] a causal connection between the two." *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021) (citing *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 566 (7th Cir. 2019)). Central States challenges the third element, arguing that Plaintiff fails to allege a causal connection between her termination and her filing the EEOC complaint.

Plaintiff supports her retaliation claim with a single sentence of argument: "Plaintiff was terminated after her EEOC charge was filed, despite the fact that she was in violation of the policy prior to that." (Dkt. 20 at 13.) But as Central States argues, Plaintiff's complaint tells a more complete, and contradictory, story. Plaintiff alleges that she was fired around six months after filing her EEOC charge. She also alleges, however, that Central States "fired her as it said it would"—that is, "that it would [not allow Plaintiff to return to the office unvaccinated] then terminate Plaintiff once she reached the maximum number of unexcused absences." (Dkt. 1 at ¶¶ 39, 36.)

In other words, Plaintiff alleges that *before* she filed her EEOC charge, Central States warned that it would fire her when a certain condition was met (i.e., when Plaintiff reached her unexcused absence limit). And, regardless of timing, Plaintiff alleges that Central States followed through exactly "as it said it would" by firing her when that condition was met. Plaintiff expressly alleges Central States' justification for firing her. In contrast, Plaintiff alleges nothing to support that

12

Central States fired her because of her EEOC filing, except that her termination occurred *after* she filed her EEOC charge. In the context of Plaintiff's other allegations, that is not enough: "When 'there are reasonable, non-suspicious explanations for the timing' of the defendant's conduct, proximity in time is not enough to support a retaliation claim." *Alley v. Penguin Random House*, 62 F.4th 358, 362 (7th Cir. 2023) (citing *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1008 (7th Cir. 2018)). Without more, Plaintiff's allegation that she was fired six months after she filed an EEOC charge is insufficient to support a retaliation claim given that she also alleges a non-suspicious (and far more detailed) explanation for Central States' action.

The Court grants Central States' motion as to Plaintiff's retaliation claim.

**CONCLUSION**

For these reasons, the Court grants in part and denies in part Central States' motion [11]. The Court denies Central States' motion as to Plaintiff's religious discrimination claim. The Court grants Central States' motion as to Plaintiff's national origin discrimination and retaliation claims and dismisses those claims without prejudice. If Plaintiff believes in good faith that she can cure the deficiencies identified in this Opinion, she may amend her complaint within 30 days.

**IT IS SO ORDERED.**

Date: 9/17/2024          Entered: _____
                                                                  SHARON JOHNSON COLEMAN
                                                                  United States District Judge